# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:18-CR-00232 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| LUIS PITT, JONATHAN OTERO, | ) | |
| PEDRO CARILLO, ANTHONY | ) | |
| CARILLO, and JOSUE FRANCO | ) | AUGUST 26, 2019 |

## MEMORANDUM OF DECISION
## RE: MOTIONS TO SEVER (ECF NOS. 115, 124, 145)

Kari A. Dooley, United States District Judge

Pending before the Court are three motions to sever filed by defendants Luis Pitt ("Pitt"), Pedro Carillo ("P. Carillo"), and Josue Franco ("Franco") in this multi-defendant prosecution for Kidnapping, in violation of 18 U.S.C. § 1201(a), and Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c). (ECF Nos. 115, 124, 145.) For the reasons set forth in this decision, the Motions to Sever are DENIED.

**Factual Allegations[1] and Procedural History**

In brief, the Government alleges that the five defendants — Pitt, Jonathan Otero ("Otero"), P. Carillo, Anthony Carillo ("A. Carillo"), and Franco — (collectively, the "Defendants") are members of the Almighty Latin King Nation ("Latin Kings"). The Defendants allegedly conspired to kidnap, hold for ransom, and expel the alleged victim ("Victim A")[2] from the Latin Kings because of the nature of one of his prior convictions.

---

[1] The factual allegations summarized herein are taken from the Indictment and the parties' submissions in relation to the Motion to Sever. (ECF Nos. 1, 115, 118.)

[2] Due to safety concerns, the Court and the parties previously agreed not to disclose the name of the alleged victim in public filings at this time. Accordingly, when referring to the alleged victim, the Court adopts the pseudonym used in the Indictment.

To effectuate this plan, Franco and A. Carillo allegedly lured Victim A to Pitt's apartment under the pretext of smoking marijuana on January 26, 2018. Upon arriving at Pitt's apartment, Victim A found Pitt, Otero, and two other individuals waiting inside. After one of the individuals left the apartment, A. Carillo began questioning Victim A concerning his criminal history while Pitt attempted to access Victim A's criminal history using a tablet device. Over time, the questioning became increasingly violent, with Pitt, Otero, A. Carillo, and Franco beating Victim A. At one point, the defendants who were present called P. Carillo, who is alleged to be the current leader of the Latin Kings in Hartford, to discuss the matter. Sometime thereafter, P. Carillo arrived at the apartment with other unknown males. Prior to P. Carillo's arrival, Victim A perceived Pitt to be in charge. After P. Carillo and the other unknown males arrived, they continued to assault Victim A over the course of what Victim A estimates was multiple hours. The perpetrators later instructed Victim A to call someone to obtain money in exchange for his release. These ransom negotiations ultimately ended when Victim A persuaded his captors to let him go to his place of employment to obtain the ransom money. Once inside, Victim A collapsed and reported the incident to the employees, who called 911.

On October 2, 2018, a grand jury returned an indictment charging the five defendants, in relevant part, in Count One with Kidnapping and in Count Two with Conspiracy to Commit Kidnapping.[3] Previously, Otero and Franco moved to sever their cases because Pitt gave a post-arrest statement to law enforcement in which he admitted to seeing Victim A at his apartment with some of the Defendants on January 26, 2018. On March 20, 2019, the Court denied the motions without prejudice because the Government represented that it did not intend to use Pitt's statements in its case-in-chief.

---

[3] On July 8, 2019, Counts Three and Four of the Indictment were dismissed upon motion from the Government.

On May 3, 2019, Otero filed a *pro se* motion seeking to dismiss his court appointed counsel and represent himself. After a *Faretta* hearing,[4] the Court provided Otero with additional time to consider whether he wished to proceed *pro se* or receive substitute counsel. On May 13, 2019, Otero reiterated, via motion, his desire to proceed *pro se*. After another *Faretta* hearing, the Court granted the motion to proceed *pro se* and appointed new standby counsel. Since then, Otero has filed several discovery-related motions, a motion to disqualify the undersigned, which was denied, and a motion to dismiss the Indictment, which remains pending. These latter two motions derive from a purported speedy trial violation in connection with the scheduling of trial.

On July 28, 2019 and August 5, 2019, respectively, Pitt and P. Carillo moved to sever their trials from their co-defendants. On August 12, 2019, P. Carillo further moved to continue the trial date based on a scheduling conflict that has arisen for his defense counsel. The Court denied the motion to continue without prejudice at a status conference on August 20, 2019. On August 23, 2019, Franco filed a motion joining in P. Carillo's motion to sever.

**Legal Standard**

Rule 14 of the Federal Rules of Criminal Procedure permits severance of properly joined defendants, at the discretion of the trial court, to avoid prejudice to a defendant or the government. Fed. R. Crim. P. 14(a). Nevertheless, there is a strong and well-settled preference that defendants who are indicted together should be tried together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003); *see also Richardson v. Marsh*, 481 U.S. 200, 209 (1987) ("Joint trials play a vital role in the criminal justice system"). "This preference is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also*

---

[4] *Faretta v. California*, 422 U.S. 806 (1975).

3

*United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). As the Supreme Court has explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. . . . Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. at 210.

A defendant claiming prejudice by joinder must demonstrate prejudice that is "sufficiently severe [as] to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986) (quoting *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984)). District courts have wide discretion in deciding whether to sever trials, and a defendant seeking review of denial of severance under Rule 14 bears an "extremely difficult burden." *United States v. Casamento*, 887 F.2d 1141, 1149–50 (2d Cir. 1989) (internal quotation marks omitted).

**Discussion**

In his motion to sever, Pitt argues that severance is warranted because: (1) his defense is likely to be antagonistic to that of his co-defendants; (2) it would be unfair to try his case with Otero who is proceeding *pro se*; and (3) a joint trial creates a risk of "spillover" prejudice. P. Carillo and Franco similarly contend that a joint trial with the self-represented Otero will be unfairly prejudicial. The Government objects to any severance and seeks to have all five defendants tried together.

As noted, the moving defendants each contend that a joint trial with Otero, who lacks any formal legal training or education, will be unfairly prejudicial. They raise the possibility that Otero

4

might ask a question that is objectionable, adopt a trial strategy that is unfavorable, or refuse to cooperate in developing a joint defense strategy. P. Carillo and Franco further express their concern that Otero may seem "unhinged" at trial and thereby prejudice them through his "shocking courtroom behavior." (P. Carillo's Mem. at 3, ECF No. 124.) P. Carillo also asserts that "Otero's potentially strident position on scheduling may force a highly inconvenient schedule on [him]." (*Id*. at 3.)

This Court is aware that *pro se* litigants are often at a distinct and severe disadvantage during a trial. But "[t]he mere fact that a codefendant is proceeding *pro se* is not in itself a ground for severance." *United States v. Tracy*, 12 F.3d 1186, 1194 (2d. Cir. 1993). In *United States v. Sacco*, 563 F.2d 552 (1977), the Second Circuit Court of Appeals recognized that precautionary steps could be successfully undertaken before and during trial to mitigate the potential prejudice that flows from having a *pro se* co-defendant. *Id.* at 556–57. For example, the Second Circuit noted with approval that the trial court in *Sacco* had appointed standby counsel, held Sacco to the same standards as an attorney, and provided appropriate instructions to the jury concerning Sacco's *pro se* status throughout trial. *Id*. The court also proposed additional instructions that trial courts could consider giving to juries and self-represented defendants if confronted with this situation in the future. *Id.* at 557.

Here, the Court is not persuaded that severance is necessary to mitigate the potential prejudice that might flow from Otero's *pro se* status. Although Otero's lack of legal training does present unique challenges, the Court has admonished Otero, and will continue to admonish him, that he will be held to the same standards as an attorney. Otero in turn has represented that he obtained legal texts to assist him in his defense to include the Federal Rules of Evidence. The Court has also appointed standby counsel to assist Otero, and Otero appears to the Court to be

5

working cooperatively with standby counsel. The other defendants in this case are also represented by very experienced defense counsel, who can serve as examples to Otero of how to conduct himself during trial. And should Otero's questions or conduct be objectionable, counsel for the Government or the co-defendants are free to object and the Court can and will take appropriate action, including but not limited to providing curative instructions to the jury. *See Sacco*, 563 F.2d at 556–57.

Further, the Court observes that Otero has appeared on his own behalf before the Court on multiple occasions, and he has not given the Court any reason to believe he is incapable of, or unwilling to, conduct himself in an appropriate manner at trial. Otero has not once seemed "unhinged." (P. Carillo's Mem. at 3.) His courtroom behavior has, at all times, been entirely appropriate and certainly does not portend "shocking courtroom behavior," as feared by the moving defendants.[5] (*Id.*)

Lastly, P. Carillo raises a potential scheduling conflict as a basis for severance. For the reasons stated on the record at the status conference on August 20, 2019, the Court's unwillingness to move the current trial date is not because of any position advanced by Otero. The parties have had a firm jury selection date of October 1, 2019 since February 7, 2019. Having said that, the Court has allowed counsel for P. Carillo to raise anew his motion for a continuance if events unfold

---

[5] Although not expected, should Otero's behavior become overly disorderly or disruptive, the Court can, if necessary, order Otero removed from the courtroom and appoint standby counsel to represent him. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct"); *Illinois v. Allen*, 397 U.S. 337, 343 (1970) ("a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom"); *see also Sacco*, 563 F.2d at 557 (recommending that trial courts instruct *pro se* defendants in multi-defendant trials that "if [the self-represented defendant] fails to obey or willfully engages in obstructionist misconduct, his self-representation may be terminated").

which he believes warrant such relief. As the Court indicated, such a continuance would only be accomplished by severing P. Carillo from the remaining defendants.

In sum, Pitt, P. Carillo, and Franco's generalized concerns about Otero's trial conduct are too speculative to overcome the strong preference for joinder. Many of the types of trial-related risks identified by the moving defendants — that Otero might ask a question that is objectionable, adopt a trial strategy that is unfavorable, or refuse to cooperate in developing a joint defense strategy — are inherent in all multi-defendant trials, regardless of whether co-defendants are represented by counsel or are proceeding *pro se* and, therefore, do not themselves provide a basis for severance. And, the Court will take all appropriate steps to mitigate any prejudice that might flow from Otero's *pro se* status, including providing appropriate instructions at the beginning and close of trial to both the jury and Otero. *See Sacco*, 563 F.2d at 556–57.

Pitt next contends that severance is warranted because he and his co-defendants are likely to present mutually antagonistic defenses.[6] The existence of antagonistic defenses is not a *per se* basis for severance. *Cardascia*, 951 F.2d at 484. A defendant must show that the defenses "conflict to the point of being so irreconcilable as to be mutually exclusive." *Id*. "It is [also] not enough to demonstrate that separate trials would have increased the chances of the appellant's acquittal . . . the defendant must instead show prejudice so severe that his conviction constituted a miscarriage of justice" and that the denial of the motion to sever "amounted to a denial of a constitutionally fair" trial. *United States v. Scott*, 637 Fed. Appx. 10, 13 (2d. Cir. 2015) (summary order) (alternations omitted; internal quotation marks omitted) (quoting *United States v. Spinelli*, 352 F.3d 48, 54–55 (2d Cir. 2003)). To meet this heavy burden, "the defendant must make a factual demonstration that acceptance of one party's defense would tend to preclude the acquittal

---

[6] P. Carillo and Franco do not appear to join in Pitt's remaining arguments.

of the other." *Salameh*, 152 F.3d at 116 (alterations omitted; internal quotation marks). Or the defendant must show that "the *essence* of the defenses prevails to such a degree — even without being mutually exclusive — that the jury unjustifiably infers that the conflict [in defenses] alone indicated that both defendants were guilty." *Cardascia*, 951 F.2d at 484 (emphasis in original); *see also United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. 1981) ("Where two defendants present defenses that are antagonistic at their core, a substantial possibility exists that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty. If the essence of one defendant's defense is contradicted by a co-defendant's defense, then the latter defense can be said to 'preempt' the former." [citations omitted; internal quotation marks omitted]).

Here, Pitt has not met his burden. Pitt first asserts that his defense will be antagonistic with his co-defendants because he, unlike them, gave a statement to law enforcement that he was present at his apartment on January 26, 2018. Thus, he argues, his co-defendants "are free to argue that they were never even present in the apartment when the alleged incident occurred," while he is not. (Pitt.'s Mem. at 5, ECF No. 116-1.) "However, it is well established that 'differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.'"[7] *United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir. 1988) (quoting *United States v. Carson*, 702 F.2d 351, 366–67 (2d Cir. 1983)); *see also United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993) ("this Court has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible"). Pitt also opines that his and his co-defendants' defenses will become antagonistic should they resort to "pointing their respective fingers at each other, thereby

---

[7] It is unclear whether Pitt's argument is premised on the Government's use of his statement in its case-in-chief. To the extent that it is, such an argument is unavailing because the Government has twice represented that it does not intend to use Pitt's statements in its case-in-chief.

8

diminishing the collective credibility of each other." (Pitt.'s Mem. at 5.) Aside from being wholly speculative, "[t]he mere fact that codefendants seek to place the blame on each other is not the sort of antagonism that requires a severance." *United States v. Villegas*, 899 F.2d 1324, 1346 (2d Cir. 1990); *see Casamento*, 887 F.2d at 1154 ("Mere 'fingerpointing' does not require severance." [internal quotation marks omitted]).

Lastly, Pitt asserts that, "at a joint trial with 5 defendants, there is also a substantial risk that the jury will confuse and fail to separate what evidence applies to which defendant." (Pitt's Mem. at 6.) Although the risk of "spillover" prejudice between co-defendants can be a basis for severance, "[a] defendant raising a claim of prejudicial spillover bears an extremely heavy burden," particularly where there is a conspiracy charged. *United States v. Friedman,* 854 F.2d 535, 563 (2d Cir. 1988). The "typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants" and that individual or separate trials would avoid that prejudice. *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992). Once a defendant is charged as a member of a conspiracy, however, "all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *Salameh*, 152 F.3d at 111; *e.g.*, *Friedman,* 854 F.2d at 563 (holding that defendant did not suffer prejudicial spillover because "most of the evidence of which he complains would have been admissible against him in a separate trial as acts of co-conspirators in the furtherance of a conspiracy").

Here, Pitt has not identified any particular evidence which he claims would be admissible against one or some of the defendants but not against him. Indeed, the Defendants are accused of conspiring to kidnap Victim A and then acting in concert to accomplish the kidnapping. As such, any evidence that is admissible against one defendant would likely be admissible in a separate trial

9

against the others. If, during the trial, evidence is identified as being admissible only against one or more of the defendants, but not against all, the Court will give an appropriate limiting instruction.

"Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993). Pitt, P. Carillo, and Franco have not overcome the strong preference for joinder. Moreover, the Court is confident that less drastic measures than severance, such as limiting instructions, will suffice to cure any risk of prejudice that might flow from a joint trial. *See id*. at 539 ("less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice"). Accordingly, the motions to sever are denied.

**Conclusion**

For the reasons set forth in this decision, Pitt's Motion to Sever (ECF No. 115), P. Carillo's Motion to Sever (ECF No. 124), and Franco's Motion to Sever (ECF No. 145) are DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of August 2019.

                                    */s/ Kari A. Dooley*
                                    KARI A. DOOLEY
                                    UNITED STATES DISTRICT JUDGE